UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FREDERICK VELASCO BAIT IT,

    Plaintiff,

    v.

KEVIN MCALEENAN,* et al.,

    Defendants.

No. 19 CV 906

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Plaintiff Frederick Velasco Bait It, a citizen of the Philippines, petitioned the Attorney General under the Immigration and Nationality Act for classification as the abused spouse of a U.S. citizen. Eligibility for that classification requires, among other things, that the self-petitioner "has resided with" her abuser-spouse. U.S. Citizenship and Immigration Services denied Bait It's petition because she had not established that she lived with her spouse during their marriage. Bait It lived with her husband before, but not after, they were married. Bait It seeks a declaratory judgment that she only needed to have lived with her spouse at some point (whether before or after the marriage) to meet the relevant eligibility requirements in the statute. She also seeks an order compelling USCIS to approve her I-360 self-petition. Defendants move to dismiss for failure to state a claim. For the reasons discussed below, defendants' motion to dismiss is denied.

---

* The Clerk shall correct the docket to substitute McAleenan, the Acting Secretary of the Department of Homeland Security, for former Secretary Kirstjen Nielsen. Fed. R. Civ. P. 25(d).

## I. Legal Standards

To survive a motion to dismiss under Rule 12(b)(6), a complaint must state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). On a 12(b)(6) motion, a court may only consider allegations in the complaint, documents attached to the complaint, documents that are both referred to in the complaint and central to its claims, and information that is subject to proper judicial notice. *Reed v. Palmer*, 906 F.3d 540, 548 (7th Cir. 2018) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

## II. Background

On July 3, 2014, plaintiff Frederick Velasco Bait It, a Filipino citizen, moved to the United States as a K-1 fiancé of a U.S. citizen. [1] ¶ 13.[1] The couple lived together from July 3 to August 23, 2014. [11-1] at 28 (Exh. C, Nov. 30, 2018 USCIS Decision). In August, Bait It moved from Connecticut to Chicago to pursue a work opportunity. [11-1] at 28–29.[2] In September, Bait It's fiancé traveled to Chicago,

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings.

[2] I can consider the USCIS decision, which the government attached as an exhibit to its motion, because the decision is central to Bait It's claim and referenced in her complaint. [1] ¶¶ 16, 17, 24. Bait It does not object to its consideration and does not dispute its authenticity as a public record subject to judicial notice. Both parties in this case filed their papers under seal. But there is a "strong presumption of public disclosure" for "materials that formed the basis of the parties' dispute and the district court's resolution." *Heraeus Kulzer, GmbH v. Biomet, Inc.*, 881 F.3d 550, 566–67 (7th Cir. 2018) (quoting *Baxter Int'l, Inc. v. Abbott Labs*, 297 F.3d 544, 548 (7th Cir. 2002)). The exceptions to that presumption are trade secrets, privileged information, and information required to be kept secret by statute. *Baxter Int'l*, 297 F.3d at 546. Personal privacy is not ordinarily a reason to seal court documents, although the redaction requirement for social security numbers, dates of birth, and financial-account numbers does not apply to the record of administrative proceedings. *See* Fed. R. Civ. P. 5.2(a), (b). This opinion will be filed on the public docket, and the parties should be prepared to address whether the filings should be unsealed. *See* Fed. R. Civ. P. 5.2(d).

where the couple married. [1] ¶ 14; [11-1] at 28. Bait It's husband returned to Connecticut the next day, and Bait It remained in Chicago to continue working. [11-1] at 28. The following February, Bait It filed an I-360 self-petition to classify herself as an abused spouse of a U.S. citizen. [1] ¶ 15. USCIS denied the petition, because Bait It failed to provide proof that she lived with her husband after they were married. [1] ¶ 17.[3] If USCIS had approved Bait It's petition for an abused-spouse classification, she would have been able to seek permanent residence in the United States. [1] ¶ 12.

## III. Analysis

Bait It alleges that the Department of Homeland Security and USCIS violated 8 U.S.C. § 1154 by incorrectly requiring her to have lived with her spouse after their marriage. [1] ¶¶ 20–21. She brings a claim under the Administrative Procedure Act seeking a declaratory judgment and to compel USCIS to approve her self-petition. [1] ¶¶ 1–3, 23, A–B (request for relief). Defendants move to dismiss Bait It's complaint in its entirety for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). [8].

### A. Subject-Matter Jurisdiction

A court must dismiss an action if it determines, at any time, that it lacks subject-matter jurisdiction, regardless of whether the parties contest it. Fed. R. Civ.

---

[3] USCIS's decision, dated November 30, 2018, stated that Bait It could appeal its decision within 33 days by filing a Form I-290B, Notice of Appeal or Motion. [11-1] at 29. Bait It does not appear to have filed a Notice of Appeal. The government does not raise any exhaustion-related issues at this stage of the case.

P. 12(h)(3); *Schaumburg Bank & Trust Co. v. Alsterda*, 815 F.3d 306, 311–12 (7th Cir. 2016). Bait It asserts that the court has federal-question and declaratory-judgment jurisdiction through the APA and the INA. [1] ¶ 3.

Under the APA, a person "suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. However, 8 U.S.C. § 1252(a)(2)(B)(ii) precludes judicial review of an agency's immigration action that is "in the discretion of the Attorney General or the Secretary of Homeland Security." *See also Bultasa Buddhist Temple of Chicago v. Nielsen*, 878 F.3d 570, 573 (7th Cir. 2017). In the context of petitions filed under 8 U.S.C. § 1154(a)(1)(A)(iii), like the one at issue here, the Attorney General has the "sole discretion" to consider evidence relating to a filed petition and to determine the weight and credibility of that evidence. *Id.* § 1154(a)(1)(J).

But statutory-interpretation questions are nondiscretionary. *Cuellar Lopez v. Gonzales*, 427 F.3d 492, 493 (7th Cir. 2005); *Morales-Morales v. Ashcroft*, 384 F.3d 418, 423 (7th Cir. 2004). Since Bait It's claim challenges a nondiscretionary question of statutory interpretation, the question at issue "falls outside § 1252(a)(2)(B)'s jurisdiction-stripping rule." *Morales-Morales*, 384 F.3d at 423. This court has jurisdiction over the dispute.

B.  **The Statutory-Interpretation Claim**

A noncitizen may petition the Attorney General for classification as an abused spouse of a U.S. citizen via an I-360 petition. 8 U.S.C. § 1154(a)(1)(A)(iii). As relevant

4

here, the statute requires that the self-petitioner "is the spouse of a citizen of the United States"; "is a person of good moral character"; "is eligible to be classified as an immediate relative"; and "has resided with the alien's spouse or intended spouse." *Id.* §§ 1154(a)(1)(A)(iii)(II)(aa)(AA), (bb), (cc), (dd).[4] A self-petitioner who meets those eligibility requirements may seek classification as an abused spouse of a U.S. citizen if the self-petitioner entered into the marriage in good faith, and, if, "during the marriage," the alien "has been battered or has been the subject of extreme cruelty perpetrated by the alien's spouse." *Id.* §§ 1154(a)(1)(A)(iii)(I)(aa), (bb).

The parties dispute the meaning of the clause "has resided with the alien's spouse or intended spouse." The government contends that the statute requires the self-petitioner and the abuser-spouse to have lived together while they were married. Bait It argues that she need only show that she lived with her abuser at some undefined time. I agree with Bait It.

Statutory interpretation begins with the text of the statute. *United States v. All Funds on Deposit with R.J. O'Brien & Assocs.*, 783 F.3d 607, 622 (7th Cir. 2015); *Univ. of Chicago v. United States*, 547 F.3d 773, 776 (7th Cir. 2008). Courts "must presume that a legislature says in a statute what it means and means in a statute what it says there." *United States v. Rosenbohm*, 564 F.3d 820, 823 (7th Cir. 2009) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992)). If the language

---

[4] "Intended spouse" refers to situations in which the self-petitioner believed that she married a U.S. citizen, but the marriage was illegitimate due to the citizen's bigamy. 8 U.S.C § 1154(a)(1)(A)(iii)(II)(aa)(BB); *see also* page 11 below. Bait It does not argue that she met the eligibility requirements because she lived with her "intended spouse." [12] at 3.

5

of a statute is "clear and unambiguous," it "must ordinarily be regarded as conclusive," absent any "clearly expressed legislative intent to the contrary." *Id.* (quoting *United States v. Turkette*, 452 U.S. 576, 580 (1981)); *see also All Funds*, 783 F.3d at 622 ("When a statute is unambiguous, our inquiry starts and stops at the text.").

The government argues that the term "spouse" in the phrase "has resided with the alien's spouse or intended spouse" demonstrates Congress's intent to require that the self-petitioner and her spouse lived together *while* they were spouses. I disagree. The word "spouse" is a descriptor used throughout to refer to the U.S. citizen-abuser. The label identifies the person but does not demand that the person have that legal status at every moment in time referring to that person. For example, a section of the statute uses "spouse" to refer to the U.S. citizen-abuser even if the spouse is deceased or if the couple is divorced. 8 U.S.C. §§ 1154 (a)(1)(A)(iii)(II)(aa)(CC)(aaa), (ccc) (noting that a self-petitioner is eligible if the "spouse died within the past 2 years," or self-petitioner can demonstrate a connection "between the legal termination of the marriage" and abuse "by the United States citizen spouse"). This is consistent with ordinary usage. For example, one could say, "She lived with her spouse before they were married," and the word "spouse" would identify the person at issue without any misapprehension by the reader or audience.

"Spouse" is a label that does not require the status to be contemporaneous with the action described in the sentence. This reading fits the other grammatical choice Congress made in the section. Congress's "choice of verb tense" informs "a statute's

6

temporal reach." *Carr v. United States*, 560 U.S. 438, 447–49 (2010) (relying on Congress's use of the present tense instead of the past or present-perfect tense to conclude that a statute should be given a "forward-looking construction"); *see also Gundy v. United States*, 139 S. Ct. 2116, 2127 (2019) (relying on use of past-tense verb in statute); *Mont v. United States*, 139 S. Ct. 1826, 1838 (2019) (same, present tense); *United States v. Wilson*, 503 U.S. 329, 333 (1992) ("Congress' use of a verb tense is significant in construing statutes.").

Here, Congress used the present-perfect tense—has resided—to describe the residency requirement for a self-petitioner and her spouse. Present-perfect tense denotes "an action having been completed at some indefinite time in the past," and signifies "imprecision of time." Bryan A. Garner, *Garner's Modern English Usage* 896–97 (4th Ed. 2016); *see also Padilla-Romero v. Holder*, 611 F.3d 1011, 1013 (9th Cir. 2010) ("As a purely grammatical matter, the use of the present perfect tense 'has been' … can connote … an event occurring at an indefinite past time ('she has been to Rome')); *Dobrova v. Holder*, 607 F.3d 297, 301 (2d Cir. 2010) (similar). In contrast to the past tense, which "indicates a more specific or a more remote time in the past," present-perfect tense refers to "a time in the indefinite past." *The Chicago Manual of Style* § 5.132 (17th ed. 2017); *see also* Garner, *supra*, at 897 ("If … the time is relatively definite … the simple past [tense] is called for.").

By using the present-perfect tense to require that the self-petitioner "has resided with" the spouse, Congress omitted any temporal restriction on the residency requirement. Had Congress intended to require the self-petitioner to have lived with

7

her spouse while they were married, it would have used the "more specific" past tense to refer to a definite moment in time—after the marriage. *See, e.g.*, *Dobrova*, 607 F.3d at 301–02 (interpreting Congress's use of "has … been admitted" in an immigration statute to refer to "*any* previous admission … including admission in the indefinite past").

Also, as Bait It points out, Congress used the phrase "during the marriage" elsewhere in the statute. *See* 8 U.S.C. § 1154(a)(1)(A)(iii)(I)(bb) (alien may petition the Attorney General for classification if "*during the marriage* … the alien or a child of the alien has been battered" (emphasis added)). When Congress wanted to limit one of the eligibility requirements to a certain time, it said so. That it did not similarly restrict the "has resided with" clause supports the interpretation that the self-petitioner and the U.S. citizen-abuser need only have lived together at some unspecified past time. *See Kucana v. Holder*, 558 U.S. 233, 249 (2010) ("[W]here Congress includes particular language in one section of a statute but omits it in another of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (quoting *Nken v. Holder*, 556 U.S. 418, 430 (2009))).

That the statute uses "abuser" and "spouse" synonymously, and that is how a reader of the statute would understand it, is reflected in the corresponding interim regulations. Title 8 of the Code of Federal Regulations, Section 204.2(c)(1) lists the same eligibility requirements as the statute, including "has resided" with the "spouse." 8 C.F.R. § 204.2(c)(1)(i)(D). It also says that the self-petitioner is "not

8

required to be living with the abuser when the petition is filed, but he or she must have resided with the abuser in the United States in the past." 8 C.F.R. § 204.2(c)(1)(v). That section of the regulation uses the word "abuser" rather than "spouse," which suggests that the word "spouse" in the residency requirement is not used as a temporal label, but a more general identifier. It shows that the statute did not attach significance to spousal status during cohabitation.[5] The regulation adds a temporal element to the residency requirement, but not that the residency had to have occurred post-marriage—rather, the self-petitioner and U.S. abuser must have lived together only "in the past." Such a broad time period mirrors Congress's use of the present-perfect verb tense in the text of the statute. Notably, § 204.2(c)(1)(vi) of the regulation, like the statute, explicitly requires that the abuse "must have taken place during the self-petitioner's marriage to the abuser," in contrast to the residency requirement. *Id.*; *see, e.g.*, *Hightower v. Kirksey*, 157 F.3d 528, 531 (7th Cir. 1998) (noting that "[a] reading of the Code of Federal Regulations further strengthen[ed]" the interpretation of a statute).

Bait It's interpretation is also consistent with Congress's purpose in creating a self-petition process for abused spouses of U.S. citizens. Congress amended the INA

---

[5] In 1997, the agency described the prima facie case for a self-petitioner to require "evidence that, *during the qualifying relationship*, the petitioner and abuser resided together in the United [States] for some unspecified period of time." Prima Facie Review of Form I-360 When Filed by Self-Petitioning Battered Spouse/Child, 62 Fed. Reg. 60,769, 60,770, 1997 WL 702117 (Nov. 13, 1997) (emphasis added). But that limiting language about the evidence was not used in the interim regulation. 8 C.F.R. § 204.2(c)(2)(iii) ("One or more documents may be submitted showing that the self-petitioner and *the abuser* have resided together in the United States." (emphasis added)). It demonstrates that the government's position in this case is not new, but it does not persuade me that its statutory interpretation is correct.

to permit victims of spousal abuse "to leave their batterers without fearing deportation." H.R. Rep. No. 103–395 (1993). Before the amendment, only a U.S. citizen or lawful permanent resident could file a petition for immigration status on behalf of a spouse, and the citizen or lawful permanent resident could withdraw that petition at any time. *Id.* In creating a mechanism for an abused immigrant spouse to self-petition, Congress sought to prevent the U.S. citizen-abuser "from using the petitioning process as a means to control or abuse an alien spouse." H.R. Rep. No. 103–395; *see also* Victims of Trafficking and Violence Protection Act of 2000, Pub. L. 106–386, 114 Stat. 1518 ("[T]he goal of the immigration protections for battered immigrants included in the Violence Against Women Act of 1994 was to remove immigration laws as a barrier that kept battered immigrant women and children locked in abusive relationships."). Thus, in enacting 8 U.S.C. § 1154(a), Congress's primary focus was on the marital status of the self-petitioner and the abuser at the time of the abuse and the petition, not on the residency requirements. The government's interpretation of the statute here would restrict, rather than expand, the circumstances in which an abused spouse could leave an abuser, potentially chilling petitions. And, it could encourage the self-petitioner to live with the abuser longer than necessary to meet an eligibility requirement. The consequences of the government's argument conflict with the statute's purpose.[6] *See United States v.*

---

[6] That Congress was not overly concerned with the residential arrangements of the self-petitioner and the spouse-abuser is further reflected in Section 1154(a)(1)(A)(iii)(I)(BB) of the statute, which states that a self-petitioner is eligible if she "has been battered *or* has been the subject of extreme cruelty." (emphasis added). Physical proximity or cohabitation is not required to subject someone to extreme cruelty, and Congress wanted to create an opportunity for a victim of spousal cruelty to self-petition for status in this country. A

10

*Johnson*, 875 F.3d 360, 366 (7th Cir. 2017) ("Statutory interpretation is guided not just by a single sentence or sentence fragment, but by the language of the whole law, and its object and policy." (quoting *Commodity Futures Trading Comm'n v. Worth Bullion Group, Inc.*, 717 F.3d 545, 550 (7th Cir. 2013))).

The government points to legislative history in support of its interpretation, relying on the 2000 amendments to the statute that extended eligibility to several categories of self-petitioners, including those in bigamous relationships or who had been recently widowed or divorced. To encompass petitioners who would have been in a legitimate marriage but for the citizen-spouse's bigamy, Congress changed the residency requirement from "has resided with the alien's spouse" to "has resided with the alien's spouse or intended spouse." VTVPA, 114 Stat. at 1464 (codified as amended at 8 U.S.C. § 1154(a)(1)(A)(iii)(II)(dd)). The government argues that Congress did not further amend the residency requirement to allow for residency before marriage. But Congress would have had no reason to do so since, for the reasons discussed above, the clause as it was written already included pre-marriage residency. Nor do the 2000 amendments inform the meaning of the word "spouse" in the "has resided with" clause. Congress's focus in enacting those amendments was on extending eligibility to petitioners who had previously been excluded; the amendments did not define the word "spouse" or elaborate on the word's significance.

---

residency requirement advances other goals—like requiring some objective indication that the marriage was not a sham marriage to obtain immigration benefits, or having a basis to believe that the petitioner formed some connection to the United States because of the abuser—but those goals do not require cohabitation during the marriage.

11

If anything, the 2000 amendments confirmed that Congress was using the word spouse only as a general descriptor, since those amendments added references to the self-petitioner's "spouse" even if that spouse had died or the couple was divorced. 8 U.S.C. §§ 1154 (a)(1)(A)(iii)(II)(aa)(CC)(aaa), (ccc).

In the government's view, the word "spouse" in the statute renders it at least ambiguous, so I should defer to USCIS's interpretation. The government relies on prior decisions of the USCIS Administrative Appeals Office, which assume (with little or no analysis) that the statute requires the self-petitioner and her abuser to have lived together during their marriage. But deference to an agency interpretation is only warranted when a statute is ambiguous. *All Funds*, 783 F.3d at 622. Here, in light of the use of the term "spouse" in the statute as a whole, along with the grammar choice Congress made in the text of the "has resided with" clause, the statute is clear, and I need not reach the issue of deference.

To the extent the statute could be considered ambiguous, *Skidmore*,[7] rather than *Chevron*,[8] would be the correct standard to apply to the USCIS decisions cited by the government. Decisions of the Board of Immigration Appeals that "carry the force of law"—for example, precedential decisions by a three-member panel or nonprecedential decisions that rely on binding BIA precedent—are entitled to *Chevron* deference. *Arobelidze v. Holder*, 653 F.3d 513, 520 (7th Cir. 2011); *see Casado v. Sessions*, 683 Fed. App'x (7th Cir. 2017) (applying *Chevron* deference to BIA decision that was "precedential" and "reasonably concluded by a three-member

---

[7] *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).
[8] *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984).

12

panel"). Where an agency determination is "less formal," such as a nonprecedential BIA opinion, *Skidmore* deference applies. *Arobelidze*, 653 F.3d at 520; *see also Fogo De Chao (Holdings) Inc. v. U.S. Dep't of Homeland Sec.*, 769 F.3d 1127, 1136–37 (D.C. Cir. 2014) (holding that *Skidmore* deference applies to USCIS Administrative Appeals Office decisions, which are "the product[s] of informal adjudication"). Here, the government urges deference to nonprecedential decisions authored by one person or the Administrative Appeals Office of USCIS, which do not carry the force of law and thus would be entitled only to *Skidmore* deference.

Under *Skidmore* deference, the agency's interpretation would be "entitled to respect—but only to the extent that [it has the] power to persuade." *Arobelidze*, 653 F.3d at 520 (quoting *Bailey v. Pregis Innovative Packaging, Inc.,* 600 F.3d 748, 751 (7th Cir. 2010))). The relevant factors to consider would be "the thoroughness in [the agency's] consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)). Here, even if I were to find the statute ambiguous, I would decline to defer to USCIS's interpretation of it. Although consistent with its approach in other cases, the agency's interpretation is not persuasive because, as discussed above, its hypertechnical imposition of a temporal limitation on the word "spouse" is not consistent with the word's use in the statute, ordinary usage, and the statute's purpose.[9]

---

[9] *Hollingsworth v. Zuchowski et al.*, No. 18-62506-CIV (S.D.F.L. April 26, 2019), agreed with the government's position and interpreted "resided with the alien's spouse or intended spouse" to mean that the self-petitioner must have lived with the abuser while they were

13

## IV. Conclusion

The "has resided with" clause does not require spousal status at the time of cohabitation. The government's motion to dismiss, [8], is denied. The government shall answer the complaint by October 7, 2019, and a status hearing is set for October 16, 2019, at 9:30 a.m.

ENTER:

/s/ Manish S. Shah
Manish S. Shah
United States District Judge

Date: September 23, 2019

---

married. I am not persuaded by the analysis for the reasons discussed and decline to follow *Hollingsworth*.

14